**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 18 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DONALD G. HOGAN,

      Plaintiff - Appellant,

v.

OKLAHOMA DEPARTMENT OF
CORRECTIONS; ANITA
TRAMMELL, THOMAS SHARP,
BOBBY BOONE, and DONNIE
WORKMAN, in their individual and
official capacities; OKLAHOMA
CORRECTIONS INDUSTRIES,

      Defendants - Appellees.

No. 02-7091

(E.D. Oklahoma)

(D.C. No. 00-CV-540-P)

**ORDER AND JUDGMENT** *

Before **KELLY** , **ANDERSON** , and **MURPHY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Donald Gene Hogan, proceeding  *pro se*  and *in forma pauperis* , appeals the district court's grant of summary judgment to defendants in this 42 U.S.C. § 1983 action alleging that Hogan's Eighth Amendment rights were violated while he was an inmate in the Mack Alford Correctional Center ("MACC") in Stringtown, Oklahoma.  We affirm.

## BACKGROUND

In December 1996, while incarcerated in the Davis Correctional Facility ("DCF") in Oklahoma, Hogan was placed on a medical restriction when he was diagnosed with a 6 cm. ventral hernia.  The restriction still existed in 1998.

On March 16, 2000, Hogan was transferred from DCF to MACC, where he alleges he was assigned to the farm crew and required to lift rocks "in excess of 200 lbs."  Appellant's Br. at 7.  He alleges that he showed the DCF medical records to defendants Anita Trammell (the MACC Unit Manager), Donnie Workman (the Farm Supervisor for defendant Oklahoma Correction Industries ("OCI")), and to Thomas Sharp (the MACC Investigating Officer).    [1]   He

---

[1] In addition to defendants OCI, Trammell, Workman and Sharp, the other defendants in this case are the Oklahoma Department of Corrections ("DOC"),
(continued...)

-2-

submitted to the district court two affidavits from fellow inmates Robert Carr and

Ernest Tillman. The Carr affidavit stated that Carr, while on the farm crew with

Hogan, observed "Hogan g[i]ve Donnie Workman some paperwork." Carr Aff.,

Mot. to Enter Exhibits, Ex. A-1, R. Vol. 1 at Tab 40. The Tillman affidavit stated

that Tillman, also on the farm crew, "was present March 25th 2000 when Donald

Hogan gave medical records to Don Workman during orientation . . . and . . . to

Anita Trammell and Thomas Sharp and they would not honor them." Tillman

Aff., id., Ex. A. Defendants provided an affidavit from Mary Lou Rush, the

Warden's Assistant at MACC, who stated that:

> Inmate Hogan was received at [MACC] on March 17, 2000. When
> he arrived at this facility there was a Medical Transfer History
> Summary sheet in his medical records from [DCF] the sending
> facility that stated that the inmate was basically healthy and without
> restrictions for travel. In medical progress notes it states that inmate
> Hogan had not had a physical exam since April 17, 1996. There were
> no restrictions noted at that time nor was there any mention of a
> hernia or hemorrhoids, there was documentation of varicose veins.

Rush Aff., Resp. to the Court's Order of 2/5/02, Ex. A, R. Vol. 1 at Tab 39. She

further stated that "[Hogan] worked on the Farm Tractor Crew from March 27,

200[0] until April 21, 200[0] with no medical issues." Id.[2] Defendant Workman

---

[1](...continued)
and Bobby Boone, the MACC Warden.

[2]The Rush affidavit actually states that Hogan worked on the farm crew
with no medical incidents from March 27, 2001 until April 21, 2001. We assume
that the year referenced was a typographical error, inasmuch as it is undisputed

(continued...)

filed an affidavit in which he stated, "[a]t no time while I was [Hogan's] supervisor did he present me with any medical restriction slip until after his appointment with MACC medical services on April 21, 2000." Workman Aff., id., Ex. C.

On April 21, 2000, Hogan reported to the medical unit at MACC complaining that he felt he had a hernia that was about to rupture. The medical staff apparently did not diagnose a hernia, but placed Hogan on a medical restriction prohibiting lifting over 10 lbs., with no repetitive stooping and bending. When he returned for another evaluation on April 26, the lifting restriction was modified to prohibit lifting over 25 lbs. and he was diagnosed with an oblique muscle strain. Marcus Pogue, the Health Services Administrator at MACC, stated in his affidavit that medical restrictions lasted for ninety days, following which an inmate would need to see a doctor again to determine if an extension of the restriction was warranted. The medical restrictions for Hogan contained in the record verify that ninety day duration. The Pogue affidavit further states that "Hogan has not sought medical attention for . . . the supposed hernia (oblique muscle strain) or hemorrhoids since May 8, 2000." Pogue Aff., id., Ex. B.

---

[2](...continued)
that the events relevant to this action occurred in 2000, not 2001.

Hogan failed to report for work on May 1, 2, 3, 4, and 8, nor did he inform his supervisor that he was ill. He was issued five misconduct reports, four of which were ultimately dismissed and expunged from his record, with the result that he lost 25 earned credits and was placed in restrictive housing for five days.

Hogan then filed a 42 U.S.C. § 1983 action, alleging that defendants' actions had violated his Eighth Amendment right to be free from cruel and unusual punishment. He also sought restoration of his good time credits and alleged his due process rights were violated by his placement in restrictive housing. Defendants filed a motion to dismiss the complaint, which the district court granted, pursuant to 28 U.S.C. § 1915(e), on the ground that it was frivolous. The district court did so apparently on the recommendation of then United States Magistrate Judge James H. Payne. Hogan appealed that dismissal, and a panel of this court reversed the district court's dismissal and remanded the case to the district court. Hogan v. Okla. Dept. of Corrections, No. 01-7091, 2002 WL 12272 (10th Cir. Jan. 4, 2002). The only issue on remand was whether defendants violated Hogan's Eighth Amendment rights because they knowingly forced him to engage in work which caused him pain and/or aggravated a prior medical condition.

On remand, the case was assigned to former Magistrate Judge Payne, who had by this time been appointed a United States district court judge. Defendants

filed a response to this court's order and filed a motion for summary judgment, which the district court granted.

Hogan appeals, arguing that the district court erred in granting summary judgment to defendants on his Eighth Amendment claim. In support of this argument, Hogan asserts ten specific errors allegedly committed by the district court: (1) Judge Payne suffered from a conflict of interest in this case because he was the magistrate judge who had previously recommended dismissal of the action as frivolous; (2) defendants' response to this court's remand was "declared 'moot' for being filed out of time," Appellant's Br. at 2, and therefore should not have been considered by the district court; (3) the medical policies upon which defendants relied in treating Hogan were dated July 23, 2001, some ten months after Hogan's civil rights complaint was initially filed, and therefore could not be invoked as justification for their conduct, nor could the court rely upon defendants' affidavits, which Hogan asserts were unnotarized; (4) the district court erred in denying Hogan's motion for a default judgment when defendants "were in fact in default for failing to respond in the allowable time frame," id. at 3; (5) the district court erred in denying Hogan's motion for a restraining order or injunction "when the plaintiff[']s mail to the court is being removed from the correctional center post office and or disappearing in a suspicious manner," id.; (6) the district court erred in refusing to permit Hogan to amend his complaint;

(7) the district court erred in refusing to consider issues raised in a supplemental brief filed by Hogan; (8) "whether the lower district court can totally ignore sworn and notarized affida[v]its from two witnesses who saw the medical records being handed along with memos to Anita Trammell, Thomas Sharp, then to Donnie Workman on the farm at the same time that the plaintiff was assigned there," id.; (9) whether any defendants are entitled to immunity; and (10) whether defendants' attorney, Linda Soper, can properly represent defendants when she allegedly failed to make an entry of appearance before the district court.

**DISCUSSION**

We review the grant of summary judgment de novo, applying the same standard as did the district court. Arndt v. Koby, 309 F.3d 1247, 1250 (10th Cir. 2002). "Summary judgment is proper when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. at 1250-51 (quoting Fed. R. Civ. P. 56(c)).

Hogan argues in conclusory fashion that Judge Payne should have recused himself because of bias, on the ground that, while serving as a magistrate judge, he had recommended that Hogan's complaint be dismissed with prejudice. We

perceive no basis for recusal. To the extent Hogan argues that Judge Payne's prior adverse ruling suggested bias, we reject that as a basis for seeking recusal. See Liteky v. United States, 510 U.S. 540, 555 (1994); Sac & Fox Nation v. Cuomo, 193 F.3d 1162, 1168 (10th Cir. 1999) (noting that "merely adverse rulings can almost never constitute grounds for disqualification"). To the extent Hogan seeks an evidentiary hearing on this matter, assuming he sought such a hearing before the district court, we conclude no such hearing is or was warranted.

Hogan's argument relating to defendants' allegedly "moot" response to this court's order in the first appeal lacks factual support. The district court directed defendants to file a response to this court's order remanding Hogan's Eighth Amendment claim. Defendants timely filed a motion for enlargement of time to file their response. Because defendants then filed the response before the district court ruled on the motion for enlargement of time, the court accepted the response and found the motion for enlargement of time moot. No error occurred in connection with that ruling. Hogan's request for a default judgment was apparently premised in part upon defendants' motion for enlargement of time, and in part upon defendants' alleged failure to include the letter "P" following the case number in all pleadings. We discern no error in the district court's denial of Hogan's motion for a default judgment.

Hogan's arguments relating to the denial of his motion for a restraining order or injunction, the district court's alleged failure to permit him to amend his complaint, and the court's refusal to consider arguments made in his supplemental brief all stem from his allegation that prison authorities were interfering with his mail, thereby interfering with his pursuit of this action. The district court correctly observed that the only issue on remand from this court was Hogan's Eighth Amendment claim, and any new allegations would need to be presented in a new action. Finally, the record does not support Hogan's allegation that Ms. Soper is not the proper attorney of record for defendants.

Hogan's remaining claims of error are all subsumed within the merits of his primary argument, which this court remanded to the district court, that defendants violated his Eighth Amendment rights by ignoring his alleged medical restrictions. We affirm the district court's grant of summary judgment to defendants on this claim. [3]

First, the court correctly held that defendants DOC and OCI are immune from suit under the Eleventh Amendment. See <u>Sturdevant v. Paulson</u>, 218 F.3d

---

[3]Hogan argues that in granting summary judgment to defendants, the district court erroneously relied upon medical policies dated after the events at issue in this case, and upon unnotarized affidavits from defendants. We disagree. There is no evidence that the district court relied upon those medical policies in granting summary judgment, nor do we perceive any deficiency in defendants' affidavits.

1160, 1164 (10th Cir. 2000). The court also correctly held that defendant Warden Boone should be dismissed from the case because Hogan failed to allege any personal participation by the Warden and "[p]ersonal participation is an essential allegation in a § 1983 claim." Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996).

> [I]n cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that prison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody. Eighth Amendment claims alleging inadequate or delayed medical care thus involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the [government] official acted with a sufficiently culpable state of mind.

Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (citations and quotations omitted); see also Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000).

The district court correctly granted summary judgment to the remaining defendants on the Eighth Amendment claim, finding that defendants established the absence of any genuine issue of material fact as to either the subjective or objective components of that claim. Defendants' affidavits establish that when Hogan was transferred from DCF to MACC, he had no medical restrictions, that he worked for a month with no medical problems, and that when he sought medical care at MACC, he was never diagnosed with a hernia, but he was in fact

placed on a medical restriction. He does not dispute those facts, nor allege that he was forced to continue work while on the medical restriction imposed by MACC medical staff. While Hogan's supporting affidavits indicate he tried to show MACC work staff his DCF medical restrictions, those restrictions were two to four years old and expired. We therefore affirm the district court's grant of summary judgment to defendants.

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge